IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 1:14cr417-MHT |
| | ) | (WO) |
| DERYKE MATTHEW PFEIFER | ) | |

OPINION

This cause is currently before the court to
determine whether defendant Deryke Matthew Pfeifer
remains incompetent to stand trial and, if so, whether,
pursuant to Sell v. United States, 539 U.S. 166 (2003),
he should be involuntarily medicated to restore his
competency to proceed to trial. Because defense
counsel has advised the court that Pfeifer's own
determination of his interests may conflict with his
best interests and because Pfeifer has been previously
found by the court to be incompetent to stand trial,
Pfeifer's defense counsel has asked the court to
appoint a guardian ad litem to ensure that Pfeifer's
best interests are represented. After hearing

evidence, the court, first, found that Pfeifer remains incompetent to stand trial, and, second, appointed a guardian <u>ad litem</u> to determine and advocate for Pfeifer's best interests in the upcoming <u>Sell</u> hearing and any related proceedings.

This opinion explains why the court did what it did.


## I. Background

A chronology of the relevant events in this case is as follows:

<u>July 10, 2014</u>: Pfeifer was indicted on one count of threatening to kill President Barack Obama, in violation of 18 U.S.C. § 871(a).

<u>October 6, 2014</u>: The court found that Pfeifer was incompetent to stand trial. This finding was based on solely a report by defense expert Dr. Karl Kirkland and on an agreement by counsel for both the government and Pfeifer that the court could make a finding as to

Pfeifer's mental competency to stand trial without a hearing.

October 6, 2014: Pfeifer filed a pro se statement with the court stating that he believes that he is sane.

October 7, 2014: The court determined that a hearing on competency is too important to be waived by counsel over the defendant's objection, and the court therefore issued a new order vacating its previous opinion and setting an evidentiary hearing, with Pfeifer present, to make a de novo determination of his competency.

November 24, 2014: After hearing testimony from Pfeifer, Dr. Kirkland, and Dr. Judith Campbell (a forensic psychologist employed by the Federal Bureau of Prisons, which runs one of the facilities to which Pfeifer had been committed by the court for a competency evaluation), the court issued a new order finding that Pfeifer is mentally incompetent to stand trial. See United States v. Pfeifer, 2014 WL 6673844

3

(M.D. Ala. 2014) (Thompson, J.). The court also
ordered that Pfeifer be returned to the custody of the
Bureau of Prisons to determine whether there existed a
substantial probability that within a reasonable period
of time he would attain the capacity to permit the
proceedings to go forward, pursuant to 18 U.S.C.
§ 4241(d)(1). Id.

May 18, 2015: The Bureau of Prisons filed its
psychological evaluation report with the court. Butner
Federal Medical Center staff psychologist Dr. Carlton
Pyant and staff psychiatrist Dr. Alton Williams
determined that Pfeifer remained not competent to
proceed to trial but that, if treated with psychotropic
medication, there exists a substantial probability that
his competency could be restored in the foreseeable
future. Because Pfeifer refused treatment by
psychotropic medication throughout his evaluation
period, the Bureau of Prisons also stated that it now
seeks authorization from the court to medicate him
involuntarily.

**4**

**May 26, 2015**: The court held an on-the-record conference call with counsel for both parties. Counsel for the government informed the court that it planned to move for a hearing in which it will argue that Pfeifer should be involuntarily medicated for the purpose of restoring his competency. Defense counsel advised the court that, given the potential consequences of that determination, his recommended strategy for the hearing may conflict with Pfeifer's self-determined interests. Accordingly, defense counsel requested that the court appoint a guardian <u>ad litem</u> to provide Pfeifer with independent, neutral assistance and to represent Pfeifer's best interests.

**June 4, 2015**: The court held a hearing to determine whether, after several months of treatment at the Bureau of Prisons facility in Butner, Pfeifer remained not competent to stand trial and whether a guardian <u>ad litem</u> should be appointed to represent Pfeifer's best interests at the upcoming involuntary-medication hearing.

5

## II. Competency Re-Determination

As discussed above, the court previously found Pfeifer not competent to stand trial.  See United States v. Pfeifer, 2014 WL 6673844 (M.D. Ala. 2014) (Thompson, J.).  Since the court issued that opinion, Pfeifer has spent several months in the care of the Bureau of Prison's Butner facility, where he was further evaluated through clinical interviews, behavioral observations, a physical examination, and a personality inventory.  His medical team observed that Pfeifer's thinking is dominated by grandiose, persecutory, and paranoid delusions; diagnosed Pfeifer with delusional disorder; and determined that his current state of psychosis prevents him from having a factual and rational understanding of the proceedings against him and assisting his attorney in his legal defense.  See Forensic Evaluation of Drs. Pyant and Williams, dated May 14, 2015 (doc. no. 51), at 7-8. Specifically, according to the medical team, Pfeifer

6

believes that he has a special relationship with God; that this relationship grants him influence over others; and that his criminal case is the product of an ongoing government cover-up.   These conclusions are consistent with previous evaluations submitted to the court and with the court's previous finding.   <u>See</u> <u>Pfeifer</u>, 2014 WL 6673844 at *1-2.   After reviewing this additional report, the court finds that Pfeifer remains mentally incompetent to stand trial; that is, he continues to suffer from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense.   <u>See</u> 18 U.S.C. § 4241(d).

### III. Appointment of Guardian <u>Ad Litem</u>

In addition to opining that Pfeifer is incompetent, Pfeifer's medical team at Butner determined that, without the benefit of antipsychotic or other medication, Pfeifer is not likely to regain capacity to

7

be tried.  However, because Pfeifer does not believe he is mentally ill, he refuses to take psychotropic medication.  The government has moved to medicate Pfeifer involuntarily, pursuant to Sell v. United States, 539 U.S. 166 (2003), and the court has set the issue for hearing.  See Motion for Sell Hearing (doc. no. 55).  In short, though the court has found that Pfeifer is incompetent to stand trial, critical trial proceedings (here, the Sell hearing) must go forward.

The upcoming proceeding to determine whether Pfeifer should be involuntarily medicated will present an exceedingly difficult question to the court.  It bears on fundamental notions of due process, liberty, and privacy and could restrict Pfeifer's right to make decisions about his own bodily integrity and health.  Moreover, the court's decision will have serious consequences on the remaining proceedings in Pfeifer's criminal case.  If Pfeifer is medicated and his competency is restored, the case will proceed to trial; if he is not medicated and he remains not competent,

the government may move to institutionalize him indefinitely, pursuant to 18 U.S.C. § 4246.

The dilemma here is how to proceed in a criminal proceeding with an incompetent defendant. After considering the problem, this court has determined that dual representation for Pfeifer by both legal counsel and a guardian ad litem, while perhaps not an ideal solution, is a better solution than proceeding with merely legal counsel for number of reasons. Before turning to Pfeifer's case and the situation at hand, the court will begin by addressing some general concerns.

First, the court will look at the question from the perspective of the defense attorney. Defense counsel has been charged with representing someone who court has found to be unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense. In other words, defense counsel is representing someone whose voice is unreliable. The defendant could be anywhere from

9

partially or totally incoherent to merely inconsistent. The notion of the attorney-client relationship breaks down here, for the attorney cannot rest confident that his client's expressed desires or wishes should be heeded since his client is unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense.  Indeed, because his client is incompetent as to the proceedings, in many ways it may be impossible to determine the client's voice--and thus it may be as if the attorney has no client directing him at all.  On the other hand, if defense counsel were to ignore his client's expressed desires and wishes and to represent his client's best interests, he would no longer be serving as an attorney but rather as a guardian, a role for which he was not retained or appointed.  The appointment of a guardian ad litem helps alleviate this dilemma for defense counsel.  As best he can, defense counsel can continue to try to ascertain the desires of his client and present those to the court, without the

10

conflict of wondering whether he may not be necessarily pursuing his client's best interests since his client's ability to determine and articulate what is his client's best interests is impaired.

Second, from the perspective of the overall fairness of the criminal justice process, a defendant's representation by both legal counsel and a guardian ad litem assures that these twin voices--that is, both the defendant's expressed and best interests--are presented to the court. Since it cannot be determined with any reasonable certainty which voice is "truly" the defendant's, it is best that both views be presented. Indeed, because the defendant is incompetent, the presentation of both voices seems to be the only reasonable alternative. Moreover, because the defendant is incompetent yet is being forced to participate in a criminal proceeding (albeit a competency proceeding), the court has an additional and independent obligation to make sure that its decision is as informed as it can be.

11

If both voices happen to coincide, that does not indicate that a guardian <u>ad litem</u> was not warranted. It merely means that in this case the two voices coincided and the defendant in fact expressed a view that was also determined to be in his best interest. For example, a defendant with a strong defense or facing minimal consequences may face less adverse consequences in the end if he is medicated and his competency is restored, and the defendant himself may agree with that strategy; conversely, it may be in the best interest for a defendant facing a weighty penalty without a strong defense not to stand trial, and the defendant who resists medication at any cost would agree. But more importantly, it cannot be determined whether both voices will coincide until <u>after</u> a guardian <u>ad litem</u> has been appointed and has performed in his role.

Third, from the perspective of the defendant, it may be best that he be represented by both legal counsel and a guardian <u>ad litem</u>. Because defense

counsel is conflicted about whether to heed what his client is telling him, a defense attorney may not adequately advocate his client's concerns and thus there is the serious risk that his client's voice may not be presented to the court at all. Importantly, that the defendant is incompetent to stand trial does not mean that all of his desires are unworthy of being heeded. The difference between competency and incompetency is not black and white, and a defendant may be incompetent as to certain legal matters but able to understand and engage with other important questions. See ABA Model Rules of Professional Conduct, Rule 1.14: Client with Diminished Capacity cmt. (explaining that a client with diminished capacity may not be capable of making decisions about certain legal matters, but may be able to understand, deliberate upon, and reach conclusions about matters affecting his own well-being); Rodney J. Uphoff, "The Role of the Criminal Defense Lawyer in Representing the Mentally Impaired Defendant: Zealous Advocate or

13

Officer of the Court?," 1988 <u>Wis. L. Rev</u>. 65, 103
(1988) (explaining that mental impairment can be
assessed along a continuum).  In other words, even
though incompetent, the defendant may be able to make
some rational choices, and to the extent he is able to
make those choices those choices should be given voice
in the criminal proceeding.

Here, for example, during the hearing on whether
Pfeifer remains incompetent, Pfeifer himself voiced
what could be considered reasonable and rational
concerns about his mental illness and about
psychotropic medication. He stated: "I'm standing here
and I'm wondering why, because of my belief or the way
I worship, somebody wants to medicate a person just
because of the way he [gives] praise to his God."  June
4, 2015 Hearing Tr.  These serious concerns underscore
to this court why the procedures for determining
whether a defendant should be involuntarily medicated
must be rigorous.

14

Moreover, because history teaches us that government officials have before sought to contain the politically unpopular or socially undesirable by medicating them into silence, the court is especially cautious in this field. For example, the use of psychiatric treatment, including forced medication, against political dissidents in the Soviet Union is well-documented. See, e.g., Richard J. Bonnie, "Political Abuse of Psychiatry in the Soviet Union and in China: Complexities and Controversies," 30 J. Am. Acad. Psychiatry Law 136, 137-39 (2002). Closer to home, a recent history of the American South describes the story of a black Mississippi organizer and advocate for integration who was declared insane and institutionalized in the 1950s for, at least in part, protesting the Mississippi order of things. See Isabel Wilkerson, The Warmth of Other Suns 351-52 (2010).

Having considered the problem--and a potential solution--in the abstract, the court will now turn to the situation presented by Pfeifer's case.

Defense counsel requested appointment of a guardian ad litem because his own assessment of Pfeifer's legal interests with regard to the involuntary-medication question might be at odds with Pfeifer's assessment. Because Pfeifer has been determined not competent to stand trial, defense counsel expresses concern that Pfeifer's decision-making may be impaired, and, as a result, defense counsel contends that his ethical obligations in advocating for his client's choices have become especially complex. See, e.g., Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir. 1986) ("An attorney has expanded duties when representing a client whose condition prevents him from exercising proper judgment."); cf. Uphoff, supra at 103-04 (explaining that defense counsel's role in representing a mentally impaired defendant may require counsel to balance the client's expressed choices against the seriousness of the client's mental impairment and the nature of the case). The government does not object to defense counsel's request.

**16**

A guardian ad litem is often appointed to represent the interests of an incompetent individual unable to represent his own interests in litigation.  Here, the guardian ad litem would be charged with representing Pfeifer according to Pfeifer's best interests.  Within the circumstances of this case, a guardian serving this role can help to protect Pfeifer's right to due process and to effective assistance of counsel in this proceeding.  The court has the inherent authority to make such appointment.  Cf. In re Stone, 986 F.2d 898, 902 (5th Cir. 1993) (explaining that because "the legislature cannot foresee every tool the courts might need to employ to reach a just result in all cases," "where it appears that a court cannot adequately and efficiently carry out its duties without employing some special device, the court has inherent power to do so" (citing In re Peterson, 253 U.S. 300, 312 (1920)).

The court agrees that the appointment of a guardian ad litem would assist in ensuring that Pfeifer's interests are represented fully to the court.  While

17

defense counsel would remain directed by Pfeifer's
expressed interests, the guardian ad litem can
determine and speak for Pfeifer's best interests--based
on close consultation with Pfeifer, and independently
of defense counsel--in regards to whether Pfeifer
should be administered psychotropic medication that may
restore his competency and enable him to stand trial.
See, e.g., United States v. Charters, 829 F.2d 479,
495, 498 (4th Cir. 1987) (discussing the potential role
of an independent guardian in a criminal defendant's
involuntary-medication proceeding, such as "to assist
the court in evaluating the patient's wishes") on
reh'g, 863 F.2d 302 (4th Cir. 1988); see also Sarah E.
Wolf, Note, "The Mentally Incompetent Criminal
Defendant: United States v. Weston and the Need for A
Guardian Ad Litem," 10 Geo. Mason L. Rev. 1071, 1095
(2002) (explaining that, though defense counsel may
sometimes act as de facto guardian for an incompetent
client, when the role of guardian and defense attorney
conflict, "the attorney cannot fill both roles," and

recommending that in such cases, courts appoint a guardian <u>ad litem</u> to assist the defendant in making medical decisions and present independent testimony to the court).

In sum, given the court's prior findings (as to Pfeifer's incompetency, the representations of counsel regarding a potential ethical conflict, and the serious consequences attending the court's determination as to whether Pfeifer should be involuntarily medicated), the court believes the proper course of action is to appoint an additional attorney for Pfeifer who will serve as his guardian <u>ad litem</u> for the purposes of the upcoming proceedings. Pfeifer's due-process and fair-trial rights will not be protected sufficiently, and his legal interests cannot be represented adequately, without the appointment of an additional attorney who, in consultation with Pfeifer and independently of defense counsel, can assess Pfeifer's best interests and represent them to the court.

19

### IV.  Compensation for Guardian <u>Ad Litem</u>

In appointing the guardian, the court must address whether the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, authorizes the court to compensate an additional attorney as guardian <u>ad litem</u> for Pfeifer. As the court explained in a past case, the law is admittedly somewhat vague in this area, but the court believes that there is authority for such payment.  <u>See United States v. King</u>, 473 F. Supp. 2d 1182 (M.D. Ala. 2007) (Thompson, J.).

The court first looks to the <u>Guidelines for the Administration of the Criminal Justice Act and Related Statutes</u>, which is Volume 7, Part A of the Administrative Office of the United States Courts' <u>Guide to Judiciary Policy</u>.  The <u>Guidelines</u> suggest that compensation for a guardian <u>ad litem</u> is available under one of two provisions.

20

The first relevant area of the **Guidelines** is chapter 2, which covers the appointment and payment of counsel. In the section within that chapter entitled "Compensation of Co-Counsel," the **Guidelines** provide:

> "(a) In an extremely difficult case where the court finds it in the interest of justice to appoint an additional attorney, each attorney is eligible to receive the maximum compensation allowable under the CJA. (b) The finding of the court that the appointment of an additional attorney in a difficult case was necessary and in the interest of justice must appear on the Order of Appointment...."

**Guidelines** § 230.53.20. In this case, the guardian **ad litem** would serve as a second attorney for Pfeifer. Although this case is not "extremely difficult" in that Pfeifer will require two attorneys throughout his criminal trial, it is "extremely difficult" to the extent that the court is at an impasse with respect to Pfeifer's statutory rights under 18 U.S.C. § 4241(d) and his due-process and fair-trial rights as articulated by **Sell v. United States**, 539 U.S. 166 (2003). Therefore, the court finds that this is a

21

difficult case and that the appointment of a second attorney as guardian <u>ad litem</u> to Pfeifer is necessary and in the interest of justice.

The second relevant area of the <u>Guidelines</u> is chapter three, which concerns payment for "investigative, expert, or other services" under the CJA. Section 320.50 of that chapter states that in proceedings involving <u>juveniles</u> a guardian <u>ad litem</u> appointed under 18 U.S.C. § 5034 is not eligible for compensation under the CJA; it also states that a guardian <u>ad litem</u> appointed to verify consent of an incompetent prisoner to transfer from the United States to a foreign country under 18 U.S.C. § 4109(b) is eligible for compensation under the CJA. Here, the court's appointment of a guardian <u>ad litem</u> for Pfeifer would not be under 18 U.S.C. § 5034; that section of the Code pertains to juvenile delinquency and youthful offenders, whereas Pfeifer is an adult found to be mentally incompetent and these proceedings fall under the mental-competency provisions of 18 U.S.C. § 4241.

22

Similarly, because the guardian <u>ad litem</u> will be appointed to assist in involuntary-medication proceedings, not prisoner-transfer proceedings, the court cannot look to 18 U.S.C. § 4109(b) for authorization.

Because chapter three of the <u>Guidelines</u> does not specifically address the appointment of a guardian <u>ad litem</u> for a mentally incompetent adult in involuntary-medication proceedings, the court turns instead to that chapter's general provision, which provides: "Investigative, expert or <u>other services</u> necessary to adequate representation, as authorized by subsection (e) of the Criminal Justice Act (CJA) (18 U.S.C. § 3006A), are available to persons who are eligible under the CJA...." <u>Guidelines</u> § 310.10.10 (emphasis added). Referring to subsection (e) of the CJA, the court notes that it must make a finding that such services are "necessary for adequate representation." 18 U.S.C. § 3006A(e). For the reasons already discussed, the court finds that the

23

services of a guardian ad litem at this stage of the proceedings are necessary for adequate representation of Pfeifer.

Lastly, even if the Guidelines themselves do not authorize payment for a guardian ad litem, the court finds that the CJA, which the Guidelines purport to implement, authorizes compensation under the circumstances of this case.   The CJA provides that "services necessary for adequate representation" are available for compensation under the statute.   18 U.S.C. § 3006A(e).   See United States v. Doe, 230 F. Supp. 2d 662, 664 (D. Md. 2002) (Bredar, M.J.) (finding that, where the services of a guardian ad litem are "necessary for adequate representation," 18 U.S.C. 3006A(e), the CJA authorizes compensation for the guardian even where the implementing Guidelines do not, and explaining that "The statute must prevail over the regulation....").   In sum, the court concludes that it is authorized, pursuant to the CJA, to compensate an additional attorney as guardian ad litem for Pfeifer.

The court has determined that a local attorney and member of the CJA panel, Richard Keith, can ably serve as Pfeifer's guardian ad litem.  The court therefore has appointed attorney Keith as counsel and guardian ad litem for Pfeifer.  On August 17, 2015, the court will hold a hearing on the pending involuntary-medication matter.

DONE, this the 12th day of August, 2015.

        /s/ Myron H. Thompson
   UNITED STATES DISTRICT JUDGE