IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 1:14cr417-MHT |
| | ) | (WO) |
| DERYKE MATTHEW PFEIFER | ) | |

OPINION AND ORDER

In this criminal case, the court previously determined that defendant Deryke Matthew Pfeifer is mentally incompetent to stand trial, and allowed the federal Bureau of Prisons (BOP) more than a year to attempt to restore his competency. The question now is whether he remains incompetent, and, if so, whether the court should order a psychiatric examination and report, pursuant to 18 U.S.C. § 4246(b), of whether he "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a)-(b).

Based on the evidence presented in the record and at an evidentiary hearing on March 5, 2018, the court finds that the record adequately reflects that Pfeifer cannot be restored to mental competency, that a 'dangerousness assessment' is appropriate at this time, and that the court's previous *Sell* order for involuntary medication should be dissolved.

## I. Procedural Background

A superseding indictment charges that Pfeifer "did knowingly and willfully make a threat to take the life of, to kidnap, and to inflict bodily harm upon the President of the United States of America," *see* 18 U.S.C. § 871(a), and that he was a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1). Superseding Indictment (doc. no. 185). After an evidentiary hearing, the court concluded that Pfeifer is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him and to assist properly in his

defense. *See* 18 U.S.C. § 4241(d); *see also United States v. Pfeifer*, 121 F. Supp. 3d 1255, 1256-58 (M.D. Ala. 2015) (Thompson, J.) (outlining the court's previous rulings in this case). After Pfeifer's doctors concluded that he is not likely to regain capacity without the benefit of antipsychotic or other medication and after Pfeifer had refused to take such medication, this court concluded in late 2015, after a two-day hearing pursuant to *Sell v. United States*, 539 U.S. 166 (2003), that he should be medicated over his objection. *See United States v. Pfeifer*, 140 F. Supp. 3d 1271, 1274 (M.D. Ala. 2015) (Thompson, J.), *aff'd*, 661 F. App'x 618 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 412 (2016). Because the court stayed its *Sell* order pending appeal, Pfeifer was not committed to a BOP facility for involuntary medication until late 2016. *See* Letter from BOP (doc. no. 154).

After holding an on-the-record conference call in April 2017 and an evidentiary hearing in October 2017, the court granted two 120-day extensions based on

testimony from Pfeifer's treatment team--including forensic psychologist Allissa Marquez, Ph.D., and psychiatrist Logan Graddy, M.D.--that he had made some progress, and that they remained "hopeful" that he would be restored during the additional treatment period. *See* Opinion and Order (doc. no. 179); Opinion and Order (doc. no. 164).

At the end of the second extension period, BOP submitted a psychiatric report opining that Pfeifer remained incompetent to proceed to trial, and requesting a third 120-day extension for restoration treatment. *See* Psychiatric Report (doc. no. 191). The request was set for a hearing on March 5, 2018. However, prior to the hearing, the government moved to withdraw the request for an extension, based on its revised conclusion that Pfeifer could not be restored within the requested treatment period. *See* Motion to Withdraw Motion for Extension (doc. no. 201). The government also moved to hold a hearing on whether a dangerousness assessment should be ordered pursuant to

18 U.S.C. § 4246(b). *See* Motion for Evidentiary Hearing (doc. no. 203). Because defense counsel and Pfeifer's guardian ad litem had already made arrangements to travel to the BOP facility where Pfeifer was being examined, to participate in the hearing by videoconferencing, the court decided, in the interest of efficiency, to hear evidence on March 5 both on whether Pfeifer could be restored and whether to order the dangerousness assessment.

## II. Discussion

### A. Legal Standard

When a defendant has been found incompetent to stand trial, the court is required to commit him to the custody of BOP for "a reasonable period of time, not to exceed four months," for competency restoration treatment and a determination of whether "there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1). An additional period of hospitalization for treatment may be granted "if the

court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(2)(A).

When a court finds that a defendant remains incompetent to proceed, and that there is not a substantial probability that the he will attain competency within an additional treatment period, the court lacks authority under 18 U.S.C. § 4241 to continue to detain him for competency restoration. Because the defendant lacks the capacity to proceed, the government at that point may either release him or seek to commit him 'civilly' pursuant to 18 U.S.C. § 4246(a). *See United States v. Comstock*, 560 U.S. 126, 141 (2010) (referring to a commitment[1] under § 4246 as a "civil commitment").

---

1. Although the court refers to this issue as one of dangerousness, it notes that the statute requires an additional finding that a defendant "is presently suffering from a mental disease or defect," which results in that dangerousness. *See Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (noting that, as a matter of due process, "[a] finding of dangerousness, standing alone, is ordinarily not a sufficient ground

6

The statute allows the government to institute a hearing on this issue of 'dangerousness,' "If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons ... who has been committed to the custody of the Attorney General pursuant to section 4241(d) [for competency restoration] ..., is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available."[2]  18 U.S.C. § 4246(a).  The director must

---

upon which to justify indefinite involuntary commitment").

2. Although the court refers to this issue as one of dangerousness, it notes that the statute requires an additional finding that a defendant "is presently suffering from a mental disease or defect," which results in that dangerousness.  *See Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (noting that, as a matter of due process, "[a] finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment").

then transmit that certificate "to the clerk of the court for the district in which the person is confined," with copies to the parties, in response to which the court "shall" order a dangerousness hearing. *Id.*

If, after the dangerous hearing, the court finds by clear and convincing evidence that the defendant "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General." *Id*. § 4246(d). If the court does not find that the defendant is dangerous, he must be released. If there is a finding of dangerousness, however, the Attorney General is then to "make all reasonable efforts" to cause an appropriate State official to take custody of the defendant; if unsuccessful, the Attorney General is to "hospitalize the person for treatment in a suitable facility," until either the State assumes

responsibility, or until the defendant's condition has improved such that he can be released. *Id.*

More to the point at this stage in this case, subsection (b) of § 4246 allows the court to order an evaluation in aid of the dangerousness determination: "Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court." *Id.* § 4246(b). A defendant may be committed to federal custody for such an evaluation for up to 45 days, with the possibility of a 30-day extension upon a showing of good cause by the facility director. *See* 18 U.S.C. § 4247(b).[3]

---

3. Although § 4246 begins in subsection (a) with the institution of a dangerousness hearing by BOP's filing of a certificate, the statute allows for the court to order an assessment under subsection (b) prior to the filing of such a certificate, provided that the assessment occurs "[p]rior to the date of the hearing." 18 U.S.C. § 4246(b). Accordingly, in this case, the government has first requested a dangerousness assessment, on the basis of which BOP will presumably decide to file or not file a certificate. If the BOP determines that Pfeifer is not dangerous and therefore

Accordingly, the question now is whether Pfeifer remains incompetent to stand trial, and if so, whether the court, in its discretion, should order a dangerousness assessment.

## B. Analysis

At the evidentiary hearing on March 5, 2018, Dr. Marquez credibly testified as follows. Pfeifer continues to suffer from paranoid and delusional thoughts, in light of which he remains incompetent to stand trial. Although he has improved somewhat in demeanor and cooperativeness, his thinking remains rigid and conspiratorial, particularly regarding his case, in a way that would likely compromise his ability to work with counsel and put on a defense. In addition to the previous diagnosis of delusional disorder, Pfeifer has now also been diagnosed with paranoid personality disorder, which is characterized by pervasive distrust and suspiciousness of others. The treatment for this new diagnosis does not differ,

---

declines to file a certificate, then he is to be released.

however, from treatment for Pfeifer's previous diagnosis of delusional disorder; as a result, further improvements are not expected from any change in treatment regimen. This testimony was consistent with her forensic evaluation dated December 29, 2017.

Dr. Graddy did not evaluate Pfeifer for competency and therefore was not able to opine directly as to that issue. Nevertheless he explained, consistent with Dr. Marquez's assessment, that Pfeifer's progress had stabilized and that he would not expect any further progress based on additional treatment; that he did not believe there was any other clinically indicated treatment regimen--medication-based or otherwise--that was more likely to result in Pfeifer's restoration; that Pfeifer is currently prescribed 15 mg of Zyprexa, which he takes daily as a dissolvable tablet; and that there is one medication alternative, Haldol, which has a low possibility of being more effective, but which previously resulted in Pfeifer experiencing severe physical side effects. In light of this history, it

was Graddy's opinion that the high risk of physical side effects from changing Pfeifer's medication to Haldol, or from increasing the dosage of his current medication, outweighed a "low" chance of significant benefits from these changes.

Based on the testimony of Dr. Graddy and Dr. Marquez, the court finds that Pfeifer remains incompetent to stand trial, and that there is not a substantial probability that he would attain competency within an additional period of restoration treatment.

Having concluded that Pfeifer cannot be restored, the court also finds that a dangerousness assessment is warranted in this case. The government has previously presented witness testimony and an audio tape in support of the allegations in the superseding indictment that Pfeifer made threats against the President of the United States and other federal officials, and that he possessed firearms prior to his arrest. In addition, Dr. Marquez testified during the evidentiary hearing on March 5, 2018--and has

documented in previous forensic evaluations--that Pfeifer has behaved in an agitated and aggressive manner toward staff at the BOP facility, particularly during the period when he was not being forced to take his medication. Without making any factual findings as to these issues, the court is satisfied that there is enough evidence to warrant a dangerousness assessment pursuant to 18 U.S.C. § 4246(b).

In addition, at the hearing on March 5, 2018, counsel for Pfeifer made an oral motion to dissolve the *Sell* order, on the assumption that the government's restoration efforts have ended. The government did not oppose the motion, and further took the position that, as a legal matter, the court is without authority under *Sell* to order a defendant's involuntary medication for a purpose other than competency restoration. The court does not reach the authority issue; because the government does not seek to continue the *Sell* order, and because no other party has stated an objection, the court grants Pfeifer's motion.

***

Accordingly, it is ORDERED as follows:

(1) It is declared that there is not a substantial probability that defendant Deryke Matthew Pfeifer will attain mental competency, within an additional reasonable period for restoration treatment, to permit trial to go forward.

(2) The request of the Bureau of Prisons to withdraw its motion for an extension of time to conduct competency restoration treatment (doc. no. 201) is granted.

(3) Defendant Pfeifer's oral motion to discontinue the *Sell* involuntary medication order (doc. no. 208) is granted, with the understanding that defendant Pfeifer shall continue to be able to take his prescribed medication voluntarily if desired.

(3) The government's motion for a dangerousness examination and report pursuant to 18 U.S.C. § 4246(b) (doc. no. 203) is granted. The Bureau of Prisons is to conduct said examination, for which defendant Pfeifer

14

is to remain at the Federal Medical Center, Butner. Among other issues, the examination and report shall address the likelihood that defendant Pfeifer will voluntarily take his medication if released, and whether and how the assessment of defendant Pfeifer's dangerousness differs depending on whether he takes his medication.

(4) The final reports on defendant Pfeifer's medical or psychological condition shall be disclosed to defense counsel, the guardian ad litem, and the United States Attorney and filed with this court under seal.

DONE, this the 8th day of March, 2018.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE