IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 1:14cr417-MHT |
| | ) | (WO) |
| DERYKE MATTHEW PFEIFER | ) | |

OPINION

This criminal cause is before the court on the question whether defendant Deryke Matthew Pfeifer should be conditionally released. On March 8, 2018, this court determined, after an evidentiary hearing, that Pfeifer was mentally incompetent to stand trial and that there was not a substantial probability that he could be restored to mental competency in the foreseeable future. *See United States v. Pfeifer*, No. 1:14cr417-MHT, 2018 WL 1210962 (M.D. Ala. Mar. 8, 2018). The court also ordered an evaluation by mental-health professionals at the Federal Bureau of Prisons (BOP), whose task was to determine whether Pfeifer's release would create a substantial risk of bodily injury to another person or serious damage to

property of another.  At the end of a hearing on July 26, 2018, the court made a general and conclusory finding that Pfeifer's conditional release would not pose such a risk, and the court entered a formal order for his immediate release subject to certain specific conditions, with an opinion setting forth more detailed findings and giving a more detailed explanation to follow.  *See* Order (doc. no. 239) (ordering conditional release); Order (doc. no. 240) (adding condition of substance-abuse treatment and testing); Order (doc. no. 241) (setting first status conference after six months to review Pfeifer's performance under supervision).  This is that opinion.

### A.

Pfeifer is charged in a superseding indictment with one count of making a threat to the President of the United States, in violation of 18 U.S.C. § 871(a), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  *See* Superseding

Indictment (doc. no. 185). Specifically, the government alleges, as background to the indictment that Pfeifer in 2014, after having relocated from Michigan to Alabama, made several threatening phone calls to the Social Security Administration (SSA) office in Jackson, Michigan, and the Department of Homeland Security Mega Center/Federal Protective Service in Battle Creek, Michigan, in which he threatened to blow up the SSA building and said--either while speaking 'as God' or 'for God'--that he was "going to kill Obama." In addition, he allegedly posted a video on his Facebook page in which he had a pistol in his lap and made threats against President Obama, the SSA building, and state police officers in Ozark, Alabama, who had recently arrested him.

As stated, on March 8, 2018, this court determined, after an evidentiary hearing, that Pfeifer was mentally incompetent to stand trial and that there was not a substantial probability that he could be restored to mental competency in the foreseeable future. *See*

3

*United States v. Pfeifer*, No. 1:14cr417-MHT, 2018 WL 1210962 (M.D. Ala. Mar. 8, 2018). Later, on July 26, 2018, the court held a hearing pursuant to the provisions of 18 U.S.C. §§ 4246 and 4247(d) to determine whether Pfeifer's release would create a substantial risk of bodily injury to another person or serious damage to property of another due to present mental disease or defect.

At the outset, given some ambiguity in the statute and some confusion at the hearing, it bears addressing what the court's options are when making such a determination. Subsection (d) of 18 U.S.C. § 4246 states, "If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General"--that is, to be 'civilly committed' on the

4

basis of dangerousness. Subsection (e), titled "Discharge," further provides that, after the person has been committed, he may be released if (1) the court finds, after a hearing, that "his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another," or (2) the court finds that "his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another," provided that the court orders, "as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment." In sum, while Subsection (d) of § 4246 by its terms provides for only commitment or unconditional release, Subsection (e) provides for continued commitment, unconditional release, *and* release subject to certain conditions.

5

The court concludes that, despite the failure of Subsection (d) to discuss conditional release explicitly, § 4246 also empowers courts to conditionally release defendants in the first instance, that is, prior to civil commitment. For one, the statute empowers courts to commit individuals civilly and to release them subsequently, subject to certain conditions. This greater power, especially in the context of an otherwise procedurally convoluted statute, necessarily implies the lesser power to release conditionally in the first instance. Moreover, it would make little sense for a court to require the government to go through the administrative rigmarole of civil commitment spelled out in subsection (d), only to subsequently discharge a person subject to certain conditions, if it determined at the initial dangerousness hearing that the person would not be a danger if conditionally released, and could therefore be released under those conditions prior to any commitment.

Accordingly, the appropriate question before the court at a dangerousness hearing is twofold: first, whether the defendant's unconditional release would create a substantial risk of bodily injury to another person or serious damage to property of another due to a current mental disease or defect; and, second, if so, whether his release subject to certain conditions would still create that risk. If he is not dangerous without being subject to conditions, he is to be unconditionally released; if he would be dangerous but for the imposition of certain conditions of treatment, he is to be conditionally released subject to those conditions, which may be periodically reviewed for their appropriateness; if there are no conditions under which he would not pose a danger, he is to be committed.

B.

At the July 26 hearing, the court heard from Dr. Allissa Marquez, Ph.D., Forensic Psychologist in the

Mental Health Department of the Federal Medical Center in Butner, North Carolina. Dr. Marquez testified, consistent with her report, *see* Psychiatric Report (doc. no. 219), that the BOP was not recommending civil commitment because, although Pfeifer has many risk factors for potential violence, she was unable to draw a connection between his mental illness and his history of physical violence. However, she clarified that there is evidence that his threatening behavior is related to his mental illness and that there is a "high likelihood" that he would continue to make threats in the future. Marquez explained that such threats alone are not a good indicator of future physical violence, especially given that Pfeifer apparently did not take steps toward consummating the threats at issue here, such as buying plane tickets to, or reserving accommodation near, the SSA building or President Obama.

Given the connection between Pfeifer's mental illness and his threatening behavior, however, Marquez

agreed that the following conditions of supervision would be beneficial in treating his mental illness and therefore reducing the risk of future threats: not having firearms in his household; limiting access to drugs and alcohol, which, she explained, tend to exacerbate his symptoms of paranoia and psychosis; allowing a probation officer to check his home to make sure he does not have access to the above items; encouraging him to take his prescribed psychotropic medication on a regular basis, and to meet regularly with a therapist for counseling; ensuring that he has a stable residence; and checking in a regular basis with a probation officer, treating clinician, or the court, in order to manage his treatment plan. As she explained, all of these recommendations can be done on an outpatient basis and do not require continued hospitalization. Marquez did not recommend GPS monitoring, because Pfeifer's history of physical violence has involved close acquaintances with whom such monitoring would not prevent contact, and because

9

he had not taken steps to travel to the targets of his threats.

The court then heard from the government's counsel, Pfeifer's counsel, and the court-appointed guardian-ad-litem for Pfeifer. The government took the position that the court should adopt the conditions recommended by Dr. Marquez. Defense counsel stated that he disagreed, and instead argued that the court's standard conditions of supervision are sufficient--including, for instance, a restriction on alcohol and drugs. However, he did not take issue with any particular condition recommended by Marquez. In addition, all parties acknowledged that it would be appropriate as a typical condition of supervision, at least at the outset, to require Pfeifer to obtain the permission of a probation officer before traveling out of district. The guardian-ad-litem observed that he could not discern a significant difference between the positions of defense counsel and the government, and

took the position that the conditions recommended by Marquez are appropriate.

Prior to the hearing, the court also reviewed Dr. Marquez's written psychiatric evaluation, which included a summary of the BOP Risk Assessment Panel findings, as well as the accompanying letter from J.C. Holland, Complex Warden at the Butner facility.

The evaluation states that because Pfeifer's prior history of physical violence (unlike his threatening behavior) could not be connected to his mental illness, Pfeifer does not pose a substantial risk of bodily injury to another person or serious damage to property of another due to present mental disease or defect. However, with regard to Pfeifer's threatening behavior, which the report states *is* related to his mental illness, the report asserts that he "denies having a mental illness or a need for medication," "fails to understand the impact of his own statements and behaviors on his violen[t] history and present legal situation," and "fails to recognize the impact of his

lifestyle factors which enhance his risk of violence (e.g., enabling relationships, weapons access, drug use)." Psychiatric Report (doc. no. 219) at 16-19.

Because the report concluded that Pfeifer's risk of physical violence could not be connected to his mental illness, the court is concerned with whether his threats alone, which are unlikely to be consummated with physical violence, may constitute "substantial risk of bodily injury to another person or serious damage to property of another" under the statute, *see* 18 U.S.C. § 4246(d), such that they could justify civil commitment or the imposition of certain conditions of release. The parties did not take issue with Pfeifer's conditional release or raise this issue; nevertheless, this topic warrants discussion. While threats that are unlikely to be fulfilled may not by themselves pose "substantial risk of bodily injury to another person," the court concludes that, under certain circumstances, such as in this case, they may be disruptive enough to rise to the level of "serious damage to property."

Repeated threats to blow up a building may result in preventing others from effectively using a property, for instance by causing lockdowns or evacuations. Accordingly, a high likelihood to make serious threats in this manner may justify the imposition of civil commitment or conditional release under § 4246.

After considering the representations made on the record by Pfeifer's counsel, the government's counsel, the guardian-ad-litem, and Dr. Marquez, as well as the psychiatric evaluation and accompanying recommendations by Dr. Marquez and officials at the BOP, the court believes that a conditional release is appropriate here. The court has also considered the possibility of an unconditional release, but the court believes that, in light of Pfeifer's history of threatening behavior in connection with his mental illness, an unconditional release would not sufficiently reduce the risk of serious damage to property of another.

C.

The court therefore ordered the immediate release of Pfeifer under the conditions outlined in this opinion, and further stated in its previous orders. *See* Orders (doc. nos. 239-241).

DONE, this the 1st day of August, 2018.

                                    /s/ Myron H. Thompson
                                 UNITED STATES DISTRICT JUDGE